IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIRIAM A. ROBERSON,                           Case No. 07-2140-JAM-JFM

        Plaintiff,                     ORDER GRANTING DEFENDANT'S
                                       MOTION FOR SUMMARY JUDGMENT
    v.

QUEST DIAGNOSTICS,INC.,

        Defendant.
_____/

     This matter comes before the Court on Defendant Quest Diagnostic's ("Defendant's") Motion for Summary Judgment. Plaintiff Miriam Roberson ("Plaintiff") opposes the motion.

FACTUAL AND PROCEDURAL BACKGROUND

     Plaintiff, who is African American, was employed as a supervisor at one of Defendant's blood centers. Plaintiff supervised phlebotomists who collected and transported blood samples. Plaintiff was hired in 1978 by Sacramento Clinical Laboratory, and remained as an employee throughout the years as

1

the company was bought out by various successor companies, most recently Defendant in 2003. When Plaintiff began working for Defendant, she kept her old position as a supervisor. She did not have a phlebotomy license, and did not perform blood draws, nor had she done so for many years. Plaintiff, an at-will employee, was terminated on October 10, 2005, because she did not have a phlebotomy license. Supervisors of phlebotomists were required to have certification prior to 2003, and in early 2003 were required to be licensed. Plaintiff had not been certified prior to 2003 and did not have a license in early 2003 when the new regulations became effective. Changes in California law required all phlebotomists to become licensed pursuant to new regulations, and in the course of a compliance audit one of Defendant's compliance officers discovered that Plaintiff did not have her license and did not qualify for the grandfathering clause of the new regulations. Plaintiff knew about license requirement and had taken a course towards obtaining her license in July 2004. However she had not completed all the requirements for licensing in August 2005 when it was discovered that she was not in compliance. Defendant gave Plaintiff sixty days in which to become licensed in order to continue in her current position, and her failure to do so was the stated reason behind her termination.

Plaintiff sued Defendant and Jack Satterlee (her supervisor)in Sacramento Superior Court after she was terminated from her job, alleging state law causes of action for race discrimination, wrongful termination in violation of public policy, statutory violations, intentional infliction of emotional distress, breach of contract, and breach of the covenant of good faith and fair dealing. Plaintiff alleges that her termination followed on the heels of racially motivated comments by, or in the presence of, Jack Satterlee, and complaints she made regarding Defendant's failure to provide company cars for blood transport.

In her Superior Court suit, Plaintiff sought attorney's fees and costs and punitive and compensatory damages. Defendant Quest Diagnostics filed a demurrer in Superior Court, which was sustained in part and overruled in part. Defendant then removed the case to District Court, alleging complete diversity between the parties and amount in controversy over $75,000. Plaintiff is a citizen of California, and Quest Diagnostics is incorporated in Delaware and has its principle place of business in New Jersey. Jack Satterlee is a citizen of California, however Defendant argued that he was fraudulently joined and no viable claims against him existed.

Following discovery, Plaintiff then moved to remand the case to Superior Court, and Defendant moved for summary judgment. A

hearing on the motions was held on November 4, 2009. At this hearing, the Court denied Plaintiff's motion to remand, finding that Jack Satterlee was fraudulently joined and no viable claims against him existed. The Court also granted summary judgment in his favor for the claims brought against him. Accordingly, the Court now rules on the remaining claims in Defendant's Motion for Summary Judgment.

## II.   OPINION

### A.   Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party sustains its burden, the burden shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Id. at 324. When one party tells a story that blatantly disregards the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007). Mere disagreement or bald assertion that a genuine issue of material fact exists will not

preclude the grant of summary judgment. Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

B. Defendant's Motion for Summary Judgment

1. Race Discrimination, First Cause of Action

Plaintiff claims that she was racially discriminated against and harassed in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code §12940, which prohibits discrimination and harassment based on various grounds including race. Plaintiff claims disparate treatment, which is intentional discrimination against one or more persons on prohibited grounds. Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 354 (2000). Claims of disparate treatment discrimination under FEHA are analyzed using a three part burden shifting analysis. Id. For this three part test, a plaintiff must first prove the elements of a prima face case of discrimination. Plaintiff establishes a prima facie case if she can show that she was a member of a protected class, she was qualified for the position she sought or was performing competently in the position she held, she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and some other circumstance suggest discriminatory motive. Id. at 355. If she can do so, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for its

actions. If defendant does so, the burden shifts back to the plaintiff to show that defendant's proffered non-discriminatory reason was in reality a pretext for discrimination. Id.

In both the papers submitted and oral argument at the hearing, Plaintiff was unable to prove the elements of a prima facie case of discrimination. While claiming discrimination based on disparate treatment due to her race, Plaintiff offered no admissible evidence to demonstrate that she was treated differently from other employees. Her alleged examples of race discrimination and harassment consisted of approximately four incidents, including one in which she testified that race was not part of the conversation and another about which she testified at her deposition she could make out no racial connection. She further testified at her deposition that her managers had never said anything racially motivated.

With respect to whether Plaintiff was qualified to remain in her job, Plaintiff is also unable to meet her burden of proof for a prima facie case of discrimination. California Business and Professions Code §1246(c)(1)(A) (2004) states that certified phlebotomy technicians must be supervised by a physician, surgeon, or a supervisor who is licensed as a phlebotomy technician. Because she supervised phlebotomists, Plaintiff needed to be licensed. Moreover, as she testified in her deposition, she had not done blood draws for many years and did

not have a certificate showing she had been trained in accordance with requirements established by the State Department of Health Services. Thus Plaintiff did not qualify for the grandfathering clause that would have given her until April 2006 to obtain a phlebotomy license pursuant to §1246(b)(1). For phlebotomy technicians not eligible for the grandfathering clause, §1246(b)(1) states that the licensing regulation becomes effective in 2003. Accordingly, Plaintiff should have been licensed as a phlebotomy technician at least in 2003 to continue supervising other phlebotomy technicians.

While it is unfortunate that this oversight in her qualifications was not determined earlier, Plaintiff cannot show that she possessed the qualification necessary to perform her job at the time that she was terminated. This, coupled with her lack of evidence of discrimination or harassment, render her unable to meet her burden of proof for a prima facie case of race discrimination. While Plaintiff believes that due to her race her treatment leading up to her termination was less favorable that the treatment she alleges other employees received (such as assistance with completing the licensing requirements and not being subject to a sixty day deadline), Plaintiff lacks proof of discrimination or discriminatory intent that would create a triable issue of material fact. Plaintiff also lacks proof of harassment based on race. The Court has

already dismissed the allegations against Jack Satterlee as insufficient allegations of harassment for purposes of a claim of intentional infliction of emotional distress, and these allegations (which are the only allegations raised by Plaintiff of harassment) likewise fail here for purposes of a claim of harassment under FEHA. Accordingly, summary judgment in favor of Defendant is GRANTED.

2. <u>Wrongful Termination in Violation of Public Policy, Second Cause of Action</u>

Plaintiff alleges that she was wrongfully terminated in violation of public policy, because, in addition to asserting that her termination was because of her race, she also asserts that her termination was in retaliation for whistle blowing.

To bring a claim for wrongful termination in violation of public policy, Plaintiff must assert a public policy capable of supporting such a claim. California recognizes an exception to the at-will employment doctrine, allowing employees fired in violation of fundamental state or federal public policy to sue for tort damages. <u>Freund v. Nycomed Amersham</u>, 347 F. 3d 752, 758 (9th Cir. 2003)(citing <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167, 172 (1980)). A public policy may support a <u>Tameny</u> claim if it is "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it inures to the

benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) 'substantial' and 'fundamental.' Id.

Plaintiff alleges her termination was in violation of public policy because California Labor Code §1102.5 states that an employer "may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee reasonably believes that the information discloses a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Plaintiff alleges that she made complaints to management regarding employees transporting patients' blood specimens and medical information in their private cars, a practice which she believed violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

However, in her deposition testimony Plaintiff admitted that she did not know what section of HIPAA, or what, if any, state regulation was violated by this conduct. Plaintiff raises no claim that she reported the alleged violations to a government or law enforcement agency, and does not dispute Defendant's evidence that no violations were committed. Plaintiff's Opposition does not dispute or address any of Defendant's facts or arguments related to this issue, though she does dispute the issue in her response to Defendant's Statement

9

of Undisputed Facts. In an attempt to dispute facts taken from her deposition and the declaration of Defendant's Health and Safety Manager, Plaintiff offers evidence from her own declaration, improper case law argument, and deposition testimony that does not dispute Defendant's undisputed facts. Because Plaintiff does not offer evidence to dispute Defendant's facts and show that she was terminated in violation of public policy, the Court grants summary judgment in favor of Defendant.

3. <u>Wrongful Termination in Violation of California Labor Code §6310, Third Cause of Action</u>

In addition to alleging race discrimination and whistleblowing retaliation as the causes for her termination, Plaintiff also alleges wrongful termination in violation of California Labor Code §6310. This provision prohibits retaliation for filing written complaints about issues related to employee health and safety. Plaintiff alleges that she was fired for complaining to management about employees needing to use their personal cars to transport contaminated blood specimens, because company cars were not provided. Labor Code §6310 has been recognized as a valid basis for a wrongful termination claim, because it embodies a public policy against retaliatory firings. <u>Freund</u>, 347 F. 3d 752, 758.

Defendant argues that no violations were committed by the protocols and practices involved in transportation of blood specimens. Indeed, Plaintiff could not identify any regulations violated by these practices in her deposition, however, as long as an employee makes a health or safety complaint in good faith, it does not matter for purposes of wrongful termination whether the complaint identifies an actual violation of a workplace safety statute or regulation. Id. at 759.

Defendant argues that Plaintiff testified in her deposition that she cannot recall making a complaint about health or safety to any state agency, and that her vague expression of fears about Defendant's practice does not constitute a "complaint" under Labor Code §6310. Plaintiff does not offer evidence regarding her alleged complaint other than a statement in her own declaration that she made a complaint sometime prior to August 2005 about the lack of company cars, and relayed her employees' fears about transporting specimens in their vehicles. As with her claims in the second cause of action, Plaintiff's Opposition fails to address or dispute Defendant's facts and arguments in favor of summary judgment on this claim. Plaintiff only disputes Defendant's facts in her response to the Statement of Undisputed Facts, by raising the Freund case, which is not a fact statement but rather improper case law argument. Plaintiff has neither disputed the facts stated by Defendant nor shown

that she made a complaint about health and safety that would implicate wrongful termination in violation of the policies promoted by Section 6310. Accordingly, summary judgment in favor of Defendant is GRANTED.

4. <u>Intentional Infliction of Emotional Distress, Fourth Cause of Action</u>

Plaintiff alleges intentional infliction of emotional distress caused by Defendant's previously alleged actions, including race discrimination, harassment and wrongful termination.

The claims of intentional infliction of emotional distress were dismissed against Jack Satterlee, Plaintiff's supervisor and the person accused by Plaintiff of perpetuating the race discrimination and harassment. The allegations against Jack Satterlee, which make up the bulk of Plaintiff's emotional distress claim, were found to be insufficient for purposes of bringing a claim of intentional infliction of emotional distress. Furthermore, the Court is granting summary judgment in favor of Defendant on the issues of retaliatory termination and termination in violation of FEHA. Accordingly, as the Court is granting summary judgment in favor of Defendant on all three claims which make up Plaintiff's emotional distress claim,

Defendant's motion for summary judgment on the intentional infliction of emotional distress claim is GRANTED.

5. <u>Breach of Employment Contract, Fifth Cause of Action</u>

Plaintiff alleges breach of contract, alleging that Defedant's "Code of Ethics" document constituted a binding contract. Though Plaintiff argues in the papers and the statement of facts that she was not an at-will employee, at oral argument and in her deposition she admitted to being an at-will employee. Nonetheless, Plaintiff argues that the Code trumps her at-will status, because it formed an implied-in-fact contract. Plaintiff relies on <u>Scott v. Pacific Gas and Electric</u>, 11 Cal. 4th 454 (1995), a case in which the California Supreme Court found that the detailed guidelines for discipline contained in an employer's personnel handbook could form an implied-in-fact contract, such that the employer could only demote the employee with good cause.

Here, Plaintiff does not point to a comparable detailed system that has been adopted by Defendant to govern employee termination. She disputes Defendant's fact that her employment was at-will, (a fact confirmed by Plaintiff's own deposition testimony that she was an at-will employee), by citing to the "Code of Business Ethics," which states that "no person may take unfair advantage of anyone through manipulation, concealment,

abuse or privileged confidential information, misrepresentation of facts or any other unfair-dealing practice." Plaintiff contends that her supervisors violated this code of fair dealing when they required her to get her phlebotomy license in 60 days. However, regardless of whether her supervisors were fair in setting the license deadline, the fair dealing provision in the Code alone does not convert Plaintiff's status as an at-will employee into that of an employee governed by an implied-in-fact contract who can only be terminated for good cause. After the Scott case, the California Supreme Court decided in Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 338 (2000), that "where there is no express agreement, the issue is whether other evidence of the parties' conduct has a tendency in reason to demonstrate the existence of an actual mutual understanding on particular terms and conditions of employment. If such evidence logically permits conflicting inferences, a question of fact is presented. But where the undisputed facts negate the existence of the breach of the contract claimed, summary judgment is proper" (internal citations omitted).

   Here, Defendant offers Plaintiff's deposition testimony that Plaintiff understood her employment to be at-will, and that she could be terminated for any reason, except for reasons such as race or religion. Plaintiff does not offer proof of any understandings beyond that between herself and Defendant

regarding her employment. Though she asserts that the "fair dealing" provision in the Code of Ethics, and her longtime employment for Defendant, created an implied-in-fact contract, these assertions without more are insufficient to create a triable issue of fact. Accordingly, the Court grants summary judgment in favor of Defendant on the breach of contract claim.

6. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing, Sixth Cause of Action</u>

Like the breach of contract claim, Plaintiffs claim for breach of the implied covenant of good faith and fair dealing hinges on the existence of an employment contract. The implied covenant only applies where the court finds an express or implied contract. <u>Guz v. Bechtel Nat. Co.</u>, 24 Cal. 4th at 349.

In cases of at-will employment, the Court in <u>Guz</u> stated in a footnote that the covenant might be violated if termination of an at-will employee was a mere pre-text to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned. 24 Cal. 4th at 353. Though Plaintiff alleges that Defendant interfered with her job duties and denied her employment benefits by frustrating her efforts to obtain a phlebotomist certificate, she offers no evidence for any of these allegations. Accordingly, summary judgment is granted in favor of Defendant on this claim.

III. ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED.

Dated: December 1, 2009

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE